## Case No. 17,884.

### Ex parte WINSOR.

### [3 Story, 411.] [1]

### Circuit Court, D. Massachusetts. July Term, 1844.

CORPORATIONS—POWERS OF DIRECTORS—LEVY OF ASSESSMENTS—SET-OFF—DIVIDEND OF STOCKHOLDER.

1. Under the act of 1809, the power to lay assessments is vested exclusively in the corporation, and cannot be delegated to the directors.

[Cited in Ruggles v. Collier, 43 Mo. 365.]

2. Where the powers and privileges of the Norfolk Manufacturing Company were, by its charter, made subject to the provisions of the act of 1809, and a by-law was passed authorizing the directors "to take care of the interests, and manage the concerns of the corporation;" it was held, that the corporation had no power to delegate an authority to the directors to lay assessments, and that the said by-law did not, in fact, import an intention to delegate it.

[Cited in Smith v. Duncan, 77 Ind. 94.]

3. And the said company, having first made a dividend of 10 per cent. and, before payment thereof, laid an assessment of 10 per cent. payable on the same day; it was held, that the corporation were not entitled to take the dividend of any stockholder, without an order from him, in payment of any debt due from him to the corporation, or as a set-off to the assessment, or as a charge upon any shares, which might afterwards be sold.

This cause came before the circuit court, being certified from the district court, on account of the district judge being interested therein. The original petition and answer, and the amended petition and answer thereto, were as follows:

"To the Honorable the Judge of the District Court for the District of Massachusetts: Henry Winsor, of Boston, in said district,

as he is assignee of Samuel H. Babcock, a bankrupt, respectfully represents, that the said Babcock, prior to the decree of bankruptcy in his case, was the proprietor of twenty shares in the capital stock of the Norfolk Manufacturing Company, a corporation established by law, within and under the authority of the commonwealth of Massachusetts, which shares, under and by virtue of said decree, became vested in your petitioner. And your petitioner further shows, that on the fifteenth day of August, 1842, the said Babcock was indebted to the said corporation, in the sum of two thousand dollars (or more), for monies had and received by the said Babcock, for the use of the said company; that in the month of June, 1842, the said Babcock failed to pay his debts, and was insolvent, and ever since so continued, until the time of filing his petition for the benefit of the bankrupt act, February 7th, 1843 [5 Stat. 440]. That it was well known to the said corporation, on the said August 15th, 1842, that the said Babcock was insolvent and unable to pay his debts, and on that day the directors in the said corporation declared a dividend of ten per centum on the capital stock of the said company, being one hundred dollars on each and every share thereof, payable on November 1st, 1842; and on October 25th, 1842, the said directors laid an assessment of ten per centum, or one hundred dollars, on each and every share in the said company, payable on the same first day of November, 1842; that no money was paid by the said corporation for such dividend, but that the stockholders signed a receipt for their several portions thereof; and that as to all the shares in the said company, except the said twenty shares, the said company gave a receipt for the assessments laid thereon. That the said Babcock gave an order to the said company to receive the said dividend on the said twenty shares. That the said company claimed to apply the said dividend to the payment of the debt of the said Babcock to the said company, and to hold the said shares as security for the payment of the said assessment. That under and in pursuance of an order of the district court of the United States, for this district, the said assignee caused the said twenty shares to be sold at public auction, and James Read, of said Boston, became the purchaser thereof, and that the said Read is the treasurer of the said corporation. And it was agreed by the said Read, on behalf of the said corporation, that the said shares should be transferred to the purchaser thereof, at said sale, and that the amount of the said assessment should be placed on deposit in some bank to abide the decree of this honorable court in the premises. That the said corporation was not in a condition to, and would not have made any dividend at the said time, in the usual and ordinary course of its business; and that the same was done

---

[1] [Reported by William W. Story, Esq.]

for the·purpose and object of securing the payment of the debt, due from the said Babcock to the said company, and thus to give the said company a preference or priority over the general creditors of the said bankrupt. That the said Babcock gave the said order for the said dividends to the said company in contemplation of bankruptcy, and for the purpose of giving to the said company a preference or priority over the several creditors of the said bankrupt; or if not so given, the same was given in contemplation of bankruptcy to the said corporation, which was not a purchaser for a valuable consideration, or a bona fide creditor without notice, and the same was a fraud upon the bankrupt act, and is void. That the said company had no right or authority to appropriate the said dividends, as payment of the said debt of the said Babcock; but if they had any right to declare the same, they were bound to apply the same in payment of the said assessments, as in the case of all the other stockholders in the said company. Wherefore your petitioner prays, that the said company, and the said Read, may be summoned to appear and answer the premises, the said Read under oath, and that this honorable court will decree, that the whole proceeds of the said shares be paid to your petitioner, and that the said company be restrained by an injunction of this honorable court, from claiming any lien thereon, or in any way intermeddling therewith, and for his costs most wrongfully sustained."

Amendments to the said petition were afterwards filed by the said Winsor, and were as follows:

"The said Winsor prays leave to file the following amendments to his petition, and that Theodore Dunn, the president of the said Norfolk Manufacturing Company, be required to answer the original petition, and this amended petition, under oath, according to the best of his knowledge, information, and belief. The said Winsor farther avers, that the dividend declared by the directors of the said Norfolk Manufacturing Company on the twentieth day of August, 1842, was never payable to the stockholders in the said company, and was never paid to the said stockholders, but that the vote declaring the said dividend was rescinded on the 25th day of October, 1842. before the dividend so declared became payable. by the vote laying an assessment of the same amount, on each and every share in the said corporation, as the said dividend previously declared, which assessment was made payable at the same time, at which said dividend had been declared to be payable, and that no assessment was ever payable for, or in respect of the said shares, in the capital stock of the said company, under and by virtue of the said vote of October 25th, 1842. the said vote to lay an assessment being, in effect, merely a rescission of the said vote declaring a dividend. That it was well known to the said Dunn, president, or to some one or more of the officers of the said corporation, on the 27th day of July, 1842, and on the 15th day of August, 1842, that the said Babcock had failed to pay his debts at maturity; that he was insolvent and unable to pay the liabilities to which he was subject, individually, and as a stockholder in the Dudley W. Manufacturing Company, and otherwise. That no assessment was duly and legally made upon the said shares of the said corporation, on the 25th day of October, 1842, inasmuch as by the acts incorporating the said Norfolk Manufacturing Company, the power to lay assessments upon the shares of the said company was vested in the corporation, and to be exercised by them only, at a legal meeting duly called for that purpose, and the directors of the said corporation, could not legally make any assessment whatever upon the said shares.

"The defendants in their answer admit that Samuel H. Babcock, in the said complainant's bill mentioned, prior to the decree of bankruptcy in his case, was the proprietor of twenty shares in the capital stock of the said Norfolk Manufacturing Company in the said complainant's bill mentioned. And that under and by virtue of said decree, the interest of the said Babcock in the said shares at the time of the said decree rested in the said Winsor as assignee of the said Babcock's estate. That the said Babcock on the 15th day of August, in the year 1842, was indebted to the said Norfolk Manufacturing Company in the sum of about $2500, for monies had and received by him in trust, as treasurer of the said corporation, for the use of the said corporation. And that, at some time. the said Babcock failed to pay his debts, but the defendants assert, that they are unable to state at what time he thus failed to pay his debts. And the defendants deny that, on the said 15th day of August, in the year 1842. and for a long period thereafter, they considered the said Babcock insolvent; but assert, that the said Babcock represented at that time, and for a long time subsequently thereto, that he fully believed, that he was solvent, and had more than sufficient property to pay all his debts, and that he was negotiating to avoid the sacrifice of his property, and to pay or to provide for the payment of all his debts in full. And that he did not intend to avail himself of the benefits or provisions of the bankrupt law. That from the efforts made by the said Babcock, and from his representations to them from time to time. they fully believe, that the said Babcock continued confident in the belief, that he should make some arrangement or arrangements by which he could pay or secure to be paid all his debts in full, until down to the time or about the time of his filing his petition to be declared a bankrupt, and that they themselves fully believed that he would be able so to do. And

they further say, that but for the great sacrifice made of his property the said Babcock would have been able to pay all his debts in full—his schedule of property at cost amounting to about $200,000, and his indebtedness to 88,000 dollars only. The defendants also admit, that a dividend of 10 per cent. was made, and that afterwards an assessment of 10 per cent. was made, as set forth in the petition, and that no money was paid by the said corporation for such dividend. But they deny, that as to all the shares in the said corporation, except the said twenty shares, the said company gave a receipt for the assessments laid thereon. But they admit, that "the said Babcock, on the 27th day of July, in the year 1842, did give an order to the said company to receive the said dividend on all his shares in the said company. And they further admit, that the said company claimed and do still claim to apply the said dividend to the payment of the debt of the said Babcock to the said company, and to hold the said shares as security for the payment of the said assessment. And that under and in pursuance of an order of the district court of the United States for this district the said complainant, as assignee as aforesaid, caused the said twenty shares to be sold at public auction—and that James Read, one of the defendants, became the purchaser thereof, and that the said Read is the treasurer of the said corporation. And they further admit, that it was agreed by the said Read, on behalf of the said corporation, that the said shares should be transferred to the purchaser thereof at the said sale, and that the amount of the said assessment should be placed on deposit in some bank, to abide the decree of this honorable court in the premises. But they absolutely deny the averment of the complainant in the said bill of complaint contained, 'that the said corporation were not in a condition to, and would not have made any dividend at the said time in the usual and ordinary course of its business, and that the same was done for the purpose and object of securing the payment of the debt due from the said Babcock to the said company, and thus to give the said company a preference or priority over the general creditors of the said bankrupt,' and each and every part and parcel thereof.

"But these defendants further answering say, that the said Norfolk Manufacturing Company, as their annual accounts made up to July 1st, 1842, verify, and which were fairly, honestly, and bona fide made up for the purpose of ascertaining the true condition of their affairs, and for no other purpose, as they always had previously done in the month of July in each and every previous year, show a balance of net profits in favor of the said company, at that time, of $10,-931.64, that might properly be divided among the stockholders therein, which would pay ten per centum, and leave in the treasurer's

hands a surplus of $2631.64; that nothing had occurred in the condition or affairs of the company between the time of making up the account and declaring the dividend as before mentioned to alter its pecuniary standing for the worse. That it was the bona fide intention of the directors of the said company, so far as these defendants know, to declare and make the said dividend of 10 per cent. and that the only question made as to the declaring of the said dividend was in relation to a large debt due to them, which was amply secured by attachment of property. And the time of payment of the said dividend was protracted until the first day of November in the year 1842, for the purpose of realizing the money for the said debt to pay the said dividend, it then being probable, that the said money would be received on, before, or about that time. That the directors of the said company laid the assessment set forth in the petition, because they were disappointed in not realizing the debt due to the said company as above mentioned, as they had confidently expected to do, prior to the said first day of November in the year 1842, and because the treasurer of the said company, then being in cash advance for the said company upwards of $13,000, and not having received the amount due to the company as aforesaid, declined paying the said dividend, and for no other reason or reasons whatever. That the said Norfolk Manufacturing Company have in previous years more than once declared dividends which, from some unforeseen occurrences, or disappointments in the receipts of money, they were unable to pay, and have been obliged to lay assessments to meet such dividends in the same manner as was done in the instance stated in the said plaintiff's petition, as will appear by their record. And they absolutely deny, that the said dividend was made for the purpose of securing the payment of the debt due from the said Babcock to said company, or to give the said company a preference or priority over the general creditors of the said Babcock. But they assert, that it was made for the purpose of making a dividend of profits among the stockholders;—the said corporation having earned profits amply sufficient for that purpose. That inasmuch as said Babcock was indebted to the said company, they would not, as a matter of business, pay out a dividend to a stockholder indebted to the said company, but would retain in their hands the amount of such indebtment.

"And they absolutely deny the following charges, contained in the said bill of complaint, viz. 'that the said Babcock gave the said order for the said dividends to the said company, in contemplation of bankruptcy, and for the purpose of giving to the said company a preference or priority over the several creditors of the said bankrupt, or if not so given, the same was given in contemplation of bankruptcy, to the said corpora-

tion, which was not a purchaser for a valuable consideration, or a bona fide creditor without notice, and the same was a fraud upon the bankrupt act and is void'—and each and every one of them, and each and every part of each and every one of said charges, or averments. But on the contrary, aver and state, that the said Babcock, when he gave the said order, did not contemplate bankruptcy, but did contemplate and fully intend and believe, that he had ample property and would be able to pay all his debts in full, and that he should moreover have a surplus for himself. And, therefore, that he could not suppose, that the giving of such order to the said company was giving them a preference or priority over the several, general, or any creditor, or creditors of him, the said bankrupt. And that the said corporation were bona fide creditors and purchasers for a valuable consideration, without notice. And that the same dealings and transactions by and with the said Babcock were bona fide made and entered into more than two months before he filed his petition to be declared a bankrupt as aforesaid, and that no other party, or any party whatever to any such dealings, or transactions, or any of them, so far as these defendants had knowledge, or believe, had notice of any prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of the said bankrupt act. That the said Norfolk Manufacturing Company insist, that they are entitled and have lawful authority to appropriate the said dividends as payment of the said debt of the said Babcock. And that they had a lawful right to declare the same, and were not bound to apply the same or any part thereof in payment of the said assessments, and that the case of the said Babcock was different from that of all and every of the other stockholders in the said company, inasmuch as that, as these defendants say, the said Babcock was the only one of the said stockholders, that was indebted to the said company, except one other, who owes a debt not yet payable, and inasmuch as that the said Babcock's indebtment arose from monies of the said company. And, that the debt due from the said Babcock to the said company was strictly of a fiduciary character, for monies of the said company in his hands, and to which the said company were entitled, notwithstanding he might not be enabled to pay all, or any portion of his just debts. That it was not money belonging to him—and that the company never supposed, that they were crediting or charging him therewith—nor consented to take his express or implied obligation therefor. But that he used it for his own private purposes, without the knowledge or consent of the said company, or any stockholder or officer therein—and in violation of good faith to them. And the defendants pray that the bill may be dismissed, and that they be decreed their costs."

The answer of Theodore Dunn set forth, that he had read the answers of James Read, and the Norfolk Manufacturing Company, by James Read, treasurer of said company, to the original bill of complaint, or the original petition of said Winsor, filed in this case, and knew the contents thereof, and that the same are true, and contain as full and correct an answer to the said original bill as he can make, and requested that the same answer might be taken as and for his answer to said original bill, and to that part of the amendments to said bill or petition as requires his answer thereunto. The answer of the said Dunn then recapitulates the statements made in the preceding answer of Read, and further states that the dividend declared by the directors of said Norfolk Manufacturing Company, on the 13th day of August, 1842, was payable to the stockholders in said company, on November 1st, 1842, and was paid to all the stockholders, on said November 1st, 1842, excepting Samuel H. Babcock, by filing it in set-off to an assessment of the same amount per share, against the same stockholders, which was receivable on the same day—and that the said Babcock would have been paid the dividend on his shares in said corporation, on the same day, in the same manner, had he not previously assigned to the said company, or corporation, his said dividend, and been indebted to the said company, as stated in the answer of James Read to the original bill of complaint. That the vote declaring the said dividend was not rescinded on the 25th day of October, 1842, before the dividend so declared became and was payable by the vote laying an assessment of the same amount on each and every share in said corporation, or on any other day, in that or in any other manner. And that the assessment mentioned in the answer of said James Read, was payable for and in respect of the said shares in the capital stock of the said company, under and by virtue of the said vote of October 25, 1842, and that the vote to lay an assessment was not, nor was it intended to be, a rescission of the said vote declaring a dividend—but the said vote to lay an assessment was intended to be, and was independent entirely of the vote declaring a dividend. And according to the best of his knowledge, information and belief, the said vote to lay an assessment is not, in effect, merely a rescission of said vote declaring a dividend in law. And asserts that it was not so considered or intended, in fact, by the said Norfolk Manufacturing Company, nor the directors thereof, one of whom was the said Samuel H. Babcock, at that time, and who was present, and acted and voted to lay said assessment, nor by the said Dunn. That he not only did not know, but did not suppose that the assessment made upon the shares in the Norfolk Manufacturing Company, on the 25th day of Octo-

ber, 1842, according to the best of his knowledge, information and belief, was duly and legally made, inasmuch as by the acts incorporating the said corporation, it is empowered to make by-laws, not repugnant to the constitution and laws of the commonwealth. And that by one of the by-laws of said corporation, the directors are empowered, and it is made their duty, to take care of the interests, and manage the concerns of the corporation, which duties they could not have faithfully discharged, otherwise than by laying the said assessment to provide for the payment of the dividend declared as aforesaid, as they had been disappointed in the collection of monies due to them, upon which they relied for the payment of said dividend—and that the power to lay assessments upon the shares of said company vested in the said directors, although it might also have vested in the corporation—and could be exercised by said directors at a meeting duly holden for that purpose, as well as by the stockholders, at a legal meeting duly called for that purpose. · That whether or not said assessment was duly and legally made upon all the shares of the said corporation, the complainant or petitioner cannot make that objection, because he claims under the said Babcock, and his claim did not exist until long after said assessment was laid and made payable, and the said Babcock, while he was the sole owner of the shares in the said corporation, and solely interested therein, in which the complainant claims to have an interest as assignee in bankruptcy, and while he was a director in the said corporation, at a meeting of the said directors duly called, and legally met together, he and the other directors laid the said assessment by an unanimous vote—and then and there promised to pay the same when it was then and there made payal..e to wit, on the first day of November, 1842; and because the said complainant had no claim or interest in the said shares until long after the said November 1st, 1842,—and must have taken the same shares subject to the said assessment, subject to the lien of the said corporation thereon, and subject to the promise and agreement of the said Babcock, from whom he derived them, in relation to the said assessments thereon. And the said Dunn further answering saith, that to the best and utmost of his knowledge, information and belief, the said Babcock had not failed to pay his debts, at maturity, prior to the giving by him, the said Babcock, of the said order for dividends to the said corporation, on the 27th day of July, 1842, or prior to August 15th, 1842, and that it was not well known to the said Dunn prior to said 27th day of July, that he, the said Babcock, had failed to pay his debts at maturity, and that it was not known to him, that he, the said Babcock, had failed to pay his debts at maturity, until he filed his petition

to be declared a bankrupt, to wit, on, or about February, 1843.

William Gray, for assignee.
J. J. Clarke, for respondents.

STORY, Circuit Justice. The principal questions which have been argued in the cause, are: First. Whether the assessment laid by the directors on the shares of the Norfolk Manufacturing Company, on the 25th of October, 1842, was a good and valid assessment? Second. If valid, whether it did not, in contemplation of law, amount to a revocation, or rescission of the prior dividend declared by the directors, and payable on the same day with the assessment, or as a set-off against the same? Third. Whether, supposing the assessment and dividend good, and in full force, the order or agreement of Babcock with the company, for the transfer of his dividend, was not a collusive order or agreement in contemplation of bankruptcy, and therefore void as against the creditors of Babcock, under the bankrupt act of 1841, c. 9 [5 Stat. 440]. The latter question can become material only, in case of the failure of either of the other grounds to support the claim made by the assignee. I shall accordingly, in the first place, consider the question, whether the assessment was valid; for if it were not, then the assignee has a perfect title to the redress sought by him in this court.

The charter of the Norfolk Manufacturing Company was granted by the legislature on the 4th of February, 1824; and it was therein declared that they "shall have all the powers, and privileges, and shall be subject to all the duties, and requirements, prescribed in an act passed on the 3d of March, 1809, entitled, &c., and the several acts in addition thereto." The only material clause affecting the present case, is the fifth section of the act of 1809, which provides "that any such corporation may, from time to time, at any legal meeting, called for that purpose, assess upon each share, such sum or sums of money, as shall be judged by such corporation, necessary for raising a capital for the establishment and completion of the object of the incorporation, and for defraying the charges and expenses incident thereto, to be paid to their treasurer, at such time or times, and by such instalments, as shall be directed by the corporation." Now, the present assessment was not laid by the corporation at all; but by the sole authority of the directors. But it is said, that the directors have a co-ordinate power with the corporation, as to the laying of assessments under the by-laws of the corporation, one of which declares that "they (the directors) shall take care of the interests, and manage the concerns of the corporation." In the first place, it strikes me, that by the very terms of the act of 1809, the power to lay assessments is intended to be vested solely

and exclusively in the corporation, and to rest in its discretion, as to the time when, and extent to which it is to be exercised. The power is given in the affirmative, and the maxim, "Expressio unius est exclusio alterius," seems to me strictly applicable to such a case. It is a very high power, of a summary nature, and may involve a loss or forfeiture of the shares of the corporators, in case of a noncompliance with the requisition. It is, therefore, founded in a sound public policy, that the corporation, which is to bear the burthen, should be the sole judge of the times and occasions on which assessments should be laid. But it is said, that the corporation may delegate the powers to the directors. That is a proposition, which I am by no means prepared to admit. The general rule certainly is, that the powers confided to a corporation, like those confided to an agent, cannot ordinarily be delegated. "Delegatus non delegare," is the known maxim as to agents; and when the corporation itself is pointed out as the proper functionary to execute a discretionary power, it seems to me, that the true conclusion is, in the absence of all other provisions, that it must be solely exercised by the corporation, at its legal meetings held for that purpose. And any by-law, made in contravention of the enactments of the charter, is, as well upon the general principles of law, as by the express provisions of the act of 1809, § 1, to be treated as a mere nullity. But it does not appear to me, that the corporation ever has, or intended by its by-laws, to delegate any authority to lay any assessments. The language of the by-law, on which the whole of this part of the argument rests, is conceived in very general terms, and by no means requires, and in my judgment, does not admit of any interpretation, which shall include any such delegation of authority. It is "to take care of the interests, and manage the concerns of the corporation," which must, upon the principles of fair reasoning, be limited to the ordinary interests, and ordinary concerns of the corporation, as general agents of the corporation; and not extend to the extraordinary interests, or extraordinary concerns, expressly confided to the discretion of the corporation itself, by the very terms of the charter. In the most ordinary cases of agency, general language, however broad, when found in the instrument creating the agency, is constantly construed as limited to the special objects pointed out as the scope and purpose of the agency.[2]

But if this doctrine were at all doubtful, which it does not appear to me to be, the second point made at the bar would be equally decisive in favor of the assignee. And that is, that the assessment, if lawfully laid, was, to all intents and purposes, a complete merger, or extinguishment, or set-off of the dividend; and it is immaterial in which light it is received. It was obviously and confessedly laid for the very purpose of controlling the payment of the dividend; it was payable on the same day; and was, in fact, in respect to all the other stockholders but Babcock, actually applied, as an extinguishment, or set-off, of the dividend. No other exigency existed, or was contemplated to exist, calling for the assessment, but to recoup the dividend, and indeed to supersede the necessity of paying the dividend. Babcock himself could not have claimed the dividend, without paying the assessment, and the corporation are entitled to take the dividend under the order, or agreement, only sub modo, to discharge the assessment, or subject to the assessment. The order was, in fact, given on the 27th of July, before any dividend was declared; and after it was declared, and before it became due, the assessment was made for the very purpose of preventing the payment of the dividend out of the funds of the corporation, not then properly applicable to the purpose. It seems to me, therefore, that in no respect is the corporation entitled to the dividend, in part payment of the debt due to it, or to set-off the assessment, as a charge pro tanto, upon the shares of Babcock, which have been sold, and the proceeds lodged subject to the order of the court.

This view of the subject renders it wholly unnecessary to consider the other point, viz. whether the agreement and order to transfer the dividend was a collusive transfer in the sense of the bankrupt act. That transfer was after the failure of Babcock, and, under the circumstances, is not a question wholly free from difficulty, and I desire, therefore, to express no opinion respecting it. But I am of opinion, upon the other grounds, that the whole proceeds of the shares sold of the bankrupt ought to be paid over to the assignee, for the benefit of the bankrupt's estate, without deducting any sum for the assessments thereon, and that an injunction do issue accordingly.

[For other cases involving the estate of this bankrupt, see Cases Nos. 696, 697, and 17,886.]

---

[2] See Story, Ag. §§ 21, 62–68, and the authorities there cited.

