## KAVANAGH *vs.* THE CITY OF BROOKLYN.

Municipal corporations are not liable in damages for any injury or inconvenience to the owners of property upon the streets of the village or city, resulting from the improvement of the streets, such as grading, paving, laying curb and gutter stones, sidewalks, &c., by authority of law, when there is no negligence or unskillfulness in conducting the work of improvement.

Incidental damages to the owners of property, resulting from the establishing or altering of the grade of a street are not to be provided for, or paid, in any form, but are regarded and treated as *damnum absque injuria.*

The fundamental principle that prevails in all the statutes authorizing or providing for the grading, paving and improving of streets, is that the property thought to be benefited must pay all that is to be paid, and not the municipal treasury.

The rule of the common law is equally adverse to the claim of an individual property owner to be compensated for losses not resulting from misconduct or unskillful management, but arising necessarily from the making of the improvement.

When a duty of a judicial nature is imposed upon a public body, they are exempt from responsibility by civil action for the manner in which the duty is performed. But where a duty purely ministerial is violated, or negligently performed, by a public body or officer, an injured party may have redress by action.

The ordinance of a city corporation, directing the construction of a public improvement, within the general scope of its powers, is a judicial act; but the prosecution of the work is ministerial in its character, and the corporation must see that it is done in a safe and skillful manner.

APPEAL from a judgment of the city court of Brooklyn. The action was brought to recover damages claimed to have been sustained by the plaintiff, under the following state of facts : The plaintiff is the owner of a house and lot on the north side of Bergen street, near its intersection with Flatbush avenue, in the city of Brooklyn. The house was built about the year 1857, and on the grade of the street as then established. Subsequently the common council established a new grade about five feet higher, and caused a contract to be entered into in April, 1861, to grade and pave said Bergen street according to the new grade. The raising of the grade left the plaintiff's premises below the grade of the street as actually constructed, and also below Flatbush avenue, which had been graded some years previously. All the ground between the plaintiff's house and the junction of Flatbush avenue and Bergen street is vacant and below grade, and as the water ran down the avenue and Bergen street, portions of it overflowed into these vacant lots and against the plaintiff's house. The plaintiff claimed that the defendant should have caused an embankment to be constructed on the side of Bergen street next to the plaintiff's premises, so as to prevent the water from the street running on his lots, &c. It was not pretended that the work of building the street was unskillfully executed; nor was the authority of the common council to alter the grade questioned; but the liability of the city was claimed to result from the fact that the construction of the street, according to the new grade, necessarily caused the water to flow on the plaintiff's premises.

When the plaintiff rested, the defendant moved to dismiss the complaint. The motion was granted. A motion for a new trial was afterwards made and denied, and the plaintiff appealed from this order.

*P. S. Crooke,* for the plaintiff.

*Alexander McCue,* for the defendant.

*By the Court,* BROWN, J. The plaintiff is the owner of a house and lot of ground situate on the north side of Bergen street, and near the intersection of the street with Flatbush avenue, in the city of Brooklyn. The house was built in the year 1857, and conformed to the grade of the street as then established. Afterwards the common council of the city established a new grade of the street, raising the surface thereof about five feet higher than the old grade, and caused a contract to be entered into, about the month of April, 1861, to grade and pave the street according to the new plan. In executing the contract the plaintiff's premises were left below the line of the street, and also below the face of Flatbush avenue, which had been graded before that time. The ground between the plaintiff's house and the junction of Flatbush avenue with Bergen street is vacant, and below the grade of the street. The surface water, in a heavy rain, came rushing down Flatbush avenue into Bergen street and from thence into the vacant lots adjoining and against the plaintiff's house, broke in the foundation wall, filled the cellar with water and soil, and otherwise materially injured the building. It was not claimed that the work of grading and paving the street had been done negligently or carelessly. But the injury to the plaintiff resulted from the improvement of the street in the manner stated. The authority of the common council to grade and improve the street is conferred upon it by the 4th title of the act of the 17th of April, 1854, to consolidate the cities of Brooklyn and Williamsburgh and the town of Bushwick into one municipal government, and to incorporate the same. For this injury the plaintiff brought his action, in the city court of Brooklyn. He proved the facts stated, and rested. The court, upon the defendant's motion, nonsuited the plaintiff. He afterwards moved for a new trial, which was also denied; whereupon he appealed to this court.

It must be conceded that the injury to the plaintiff was the immediate result of the grading and paving the street

upon an elevation of the surface thereof above the surface of his lot. The ground which he assumes and must maintain to entitle him to maintain this action is, that municipal corporations are liable in damages for any injury or inconvenience to the owners of property upon the streets of the village or city resulting from the improvement of the streets, such as grading, paving, laying curb and gutter stones, sidewalks, &c., by authority of law, when there is no negligence or unskillfullness in conducting the work of improvement. Nothing short of the affirmative of this proposition will uphold the present action. If a street is to be opened and paved and fitted to become one of the thoroughfares of a populous city, it will naturally be done upon some grade which will reduce the elevation and fill up the depressions of the ground more or less, with a view to facilitate the transit of vehicles and passengers, and to discharge from the face of the street the surface water. This is what is meant when the municipal statutes speak of grading a street. The process, when completed, will have the effect to leave the surface of some of the lands upon the line of the street elevated above the grade of the street and some of them depressed below it. In neither case are the lots fit for the uses of building. Their surfaces must be reduced, or elevated, as the case may be. And they are injured and their owners damnified by the improvement to the extent of the cost of effecting this work of reduction and elevation. The lots which require to be filled in to adapt them to the uses of occupation, may also become flooded with surface water from the adjoining lands, and the owners thus sustain an additional injury by the improvement. The statutes which authorize and provide for the grading, paving and improving streets, charge upon the property on the street, or in the immediate vicinity, the cost of effecting it. It is not a charge upon the treasury of the city. The statutes, make no provision for subjecting the lands upon the street or in the vicinity to the damages resulting from such incidental injuries as I have referred to. They are never found in a street

assessment; and this is a clear indication that they were not to be provided for or paid in any form. They are regarded and treated as *damnum absque injuria.* In executing the street improvement and assessment laws, the common council represent the owners of the property benefited, and act for them and in their behalf, and not for the public of the city, generally. The fundamental principle that prevails in all this class of statutes is, that the property thought to be benefited must pay all that is to be paid, and not the municipal treasury. The plaintiff's action is subversive of this principle; for it seeks to charge the common council with the duty of making compensation for losses—not resulting from misconduct or unskillful management, but resulting necessarily from the making of the improvement. If the rule contended for should prevail, a just and intelligent system of street opening and improvement would become impossible.

The rule of the common law is equally adverse to the plaintiff's claim to recover in the action. The powers and duty of the common council, in regard to the opening, grading and paving streets, are discretionary. When application is made to them for that purpose, they are to grant or deny it, according to their own view of what is right and expedient in the premises. The proceedings are brought before them upon petition, and they are to cause notice to be given, to the end that those persons interested may have an opportunity to be heard at the time and place designated for the hearing. If the common council determine that the petition for such improvement is signed by a majority of the persons owning lands situate on the line of the improvement, and that the assessment to be imposed upon each lot for the benefit to be derived from such improvement does not exceed one third of the assessed value of such lot, as the same is directed to be ascertained by the act, and no sufficient objections are made thereto, the common council shall make an order that such improvement be made and the contemplated

work done. (*Sess. Laws of* 1859, *pp.* 475, 476, 477.) This act of the common council is judicial.

"When the duty alleged to have been violated is purely judicial no action lies, in any case, for misconduct or delinquency, however gross, in the performance of judicial duties. And although the officer may not in strictness be a judge, still, if his powers are discretionary, to be exerted or withheld according to his own view of what is necessary and proper, they are in their nature judicial, and he is exempt from all responsibility by action for the motives which influence him, and the manner in which such duties are performed." This is the rule as expressed by Mr. Justice Beardsley in *Wilson* v. *The Mayor &c. of New York*, (1 *Denio*, 595,) which was a case in most respects like the present. *The Rochester White Lead Co.* v. *The City of Rochester*, (3 *Comst.* 463,) to which we are referred, was an action for an injury done to the plaintiffs by the careless, negligent and unskillful construction of a culvert under a street, for the passage of a stream of water. The plaintiffs recovered, but the gist of the action was the want of skill and the insufficiency of the culvert to carry away the water of the stream. The same principle is asserted — that when a duty of a judicial nature is imposed upon a public body, they are exempt from responsibility by civil action for the manner in which the duty is performed. But where the duty, purely ministerial, is violated or negligently performed by a public body or officer, an injured party may have redress by action. The ordinance of a city corporation directing the construction of the work within the general scope of its powers is a judicial act, but the prosecution of the work is ministerial in its character, and the corporation must see that it is done in a safe and skillful manner. The plaintiff's counsel also relies upon *Storrs* v. *The City of Utica*, (17 *N. Y. Rep.* 104.) It was an action against the city for omitting to keep proper lights and guards at night around an excavation it had caused to be made in the street. Here also the ground of the action

was negligence, and nothing else. It also involved the question of the liability of the ultimate superior and that of the immediate superior for the negligence of the servant.

The order of the city court should be affirmed.

[ORANGE GENERAL TERM, September 8, 1862. *Emott, Brown, Scrugham* and *Lott*, Justices.]