WALDRON *v.* BERRY.

It has long been the settled doctrine in this State that highway surveyors and other town officers are not responsible in a civil suit for damages for acts done by them requiring the exercise of discretion and judgment in the discharge of their official duties, so long as they act in good faith and within the scope of their authority.

But they are held to be liable in civil suits for damages done to individuals by their wanton, malicious, or fraudulent acts, and for acts beyond their jurisdiction.

The question in such cases is *not* whether the acts complained of were *reasonable* or *proper*, or whether they were performed with *reasonable* care, or *ordinary* care. But the only question is, Did the surveyor, or other officer, in good faith, perform the act in the discharge of his duty, " according to the best of *his* abilities"?

The officer in such case is the sole judge of what is reasonable and proper, both as to the act to be done, and as to the manner of its performance, and is not liable for a mistake in judgment.

While a highway surveyor may repair the roads in his district by raising or lowering the grade, or making a ditch by the side thereof, under sec. 20, ch. 66, General Statutes, still, if such ditch is next and opposite to a dwelling-house, yard, or private way of any person, it must be properly *covered*, so as not to obstruct the passage to such house, yard, or private way, according to sec. 19 of the same chapter.

A surveyor of highways would be personally liable in a suit for damages to the adjoining land-owner for making an *uncovered* trench or ditch by the side of the travelled part of such highway, next and opposite to a house, yard, or private way, by means of which the passage to such house, &c., was obstructed, because in that case he acts without authority and in direct violation of law.

The statute does not undertake to prescribe whether there shall be *a ditch* or *no ditch* at these points, but simply forbids an *uncovered* ditch.

*Rowe* v. *Addison*, 34 N. H. 306, and *Adams* v. *Richardson*, 43 N. H. 212, commented on and criticised.

TRESPASS, *qu. cl.*, by Jeremiah W. Waldron against Andrew Berry, for removing earth and stones. Plea, the general issue, with a brief statement of justification as highway surveyor; and also of license as to the earth and gravel removed. The jury disagreed, and this case was reserved. The plaintiff had built a side-walk and bank wall on his land in the highway; and the defendant, as highway surveyor, removed the wall, and used the earth of the side-walk, and some gravel which had fallen from the plaintiff's bank into the highway, in filling up and repairing the road. The defendant introduced the record of the report of the selectmen of the town, widening and straightening the highway, in 1849. Subject to the plaintiff's objection, the defendant read the following part of said report: (1) "And we claim all the earth that may fall or slide down from the hill where the above named widths may cut into the bank on the northerly side of said highway, owned by Jeremiah W. Waldron. We award to Jeremiah W. Waldron, for all the earth or gravel that may be taken to make said road of the above named width, and for all the earth or gravel that may fall or slide down from the hill or mill-yard owned by him, the sum of twenty-five dollars, to be paid by said town of Farmington. And the said Jeremiah W. Waldron agrees to take said damages, and to give up all claim to any earth or gravel that may slide or fall down, in all future time, in consequence of cutting into the hill or bank now owned by him to width above named."

The defendant introduced the following receipt: "Farmington, July 6, 1849. Received of George W. Whitehouse, treasurer of Farmington, twenty-five dollars in full for all damages to my land in widening and straightening the New Durham ridge road, so called.

"J. W. WALDRON."

The plaintiff testified,—"I built the wall eight or ten years ago; got the stone from my farm. When the road was widened and straightened, there was an agreement that the town should have what fell down while they were cutting the road, but no more." (2) Subject to the plaintiff's objection, the defendant testified,—"There was no other place near, where I could get material to repair the road. I considered it necessary to take the earth to repair the road; and by digging that, the wall fell down." (3) Subject to the plaintiff's objection, Charles M. Demeritt, one of the selectmen who widened and straightened the road in 1849, testified,—"We made an agreement with the plaintiff, according to our report,—the town to have all the dirt and gravel that slid down, for all future time; the plaintiff to have $25 for land and dirt and gravel, for the damages, as we assessed. The plaintiff was with us, and it was talked over. Do n't remember the words. Think our report was made the same day, or about that time."

(4) The plaintiff offered to prove that he built the wall and sidewalk in the road by consent of one of the selectmen, and that the selectmen and other citizens of the town, seeing it done, did not object. This evidence was excluded; and the plaintiff excepted.

(5) The court instructed the jury that there was evidence upon which they might find a license to remove the gravel that rolled from the bank into the highway, but that the plaintiff revoked that license by forbidding the defendant removing it,—both parties having testified that the plaintiff forbade the defendant removing it. The court also instructed the jury that, without license, if the defendant gave plaintiff reasonable notice to remove everything that he claimed, and if the plaintiff removed nothing, the defendant might lawfully remove and use, in making reasonable repairs, in a reasonable manner, on the road, said gravel, and also the earth hauled into the road by the plaintiff for a side-walk, as if they had always been there, if it was a reasonable thing to be done by the defendant in making such repairs; that the defendant could not appropriate the wall to the use of the town in repairing the road; that if the wall, earth, or gravel was an incumbrance—if either of them obstructed or interfered with a reasonably free passage—the defendant might remove the same without giving notice; that if, in removing an incumbrance, or in making reasonable repairs in a reasonable manner, it was necessary to remove the wall, the defendant might lawfully remove the same, in a reasonable time and manner, to a place reasonably near and convenient for the plaintiff. To these instructions both parties excepted.

(6) The defendant excepted to the refusal of the court to instruct the jury that the defendant, in the performance of his official duty, was the judge of what was reasonable, and was not liable for an error of judgment.

(7) The defendant excepted to the refusal of the court to instruct the jury that the defendant was not liable if he acted in good faith, and in the fair exercise of his own judgment, and of ordinary and reasonable care and skill.

(8) The defendant removed the wall a short distance, and left it at a convenient place for the plaintiff. A few of the stones he used temporarily, one night, to fill a hole in the road, and then they were placed with the others. The court reserved the question whether, as a matter of law, the defendant was liable for this use of the stones, or whether it was a question of fact whether this use of them was consistent with their removal in a reasonable time and manner. The questions of law were reserved.

*Wheeler*, for the plaintiff.

*G. N. Eastman*, for the defendant.

SARGENT, J. It was held in *Yates* v. *Lansing*, 5 Johns. 282, by KENT, C. J., that judges of all courts of record, from the highest to the

lowest, and even jurors, are exempted from prosecution for acts done by them in their judicial character and within their jurisdiction. That judges of a superior court of general jurisdiction are not liable to an action or to indictment for acts done by them in a judicial capacity, but only to impeachment in case they have acted corruptly. This doctrine was sustained in the court of errors, 9 Johns. 395. In 5 Johns. 282, KENT, C. J., has collected and examined the authorities, in an able and learned opinion;—see, also, *Cunningham* v. *Bucklin*, 8 Cow. 178; *Tompkins* v. *Sands*, 8 Wend. 462; *M'Dowell* v. *Van Deusen*, 12 Johns. 356; *Mather* v. *Hood*, 8 Johns. 44.

In New York there has been a succession of decisions founded upon this doctrine, where the principle is applied to all officers whose duties are of a judicial character. In *Wilson* v. *The Mayor, &c., of New York*, 1 Denio 595, BEARDSLEY, J., in delivering the opinion, said,—" Public officers, of every grade and description, may be impeached or indicted for official misconduct or corruption. From this there is no exception, from the highest to the lowest. But the civil remedy for misconduct in office is more restricted, and depends exclusively upon the nature of the duty which has been violated. Where that is absolute, certain, and imperative,—and every merely ministerial duty is so,—the delinquent officer is bound to make full redress to every person who has suffered by such delinquency. * * * But where the duty alleged to have been violated is purely judicial, a different rule prevails, for no action lies in any case of misconduct or delinquency, however gross, in the performance of judicial duties; and although the officer may not in strictness be a judge, still, if his powers are discretionary, to be exerted or withheld according to his own view of what is necessary and proper, they are in their nature judicial, and he is exempt from all responsibility by action for the motives which influenced him and the manner in which such duties are performed. If corrupt, he may be impeached or indicted, but the law will not tolerate an action to redress the individual wrong which may have been done."

This was a leading case in New York, and is carrying the principle somewhat further than it has been understood to be applicable in some other jurisdictions, as applied to the officers of cities and towns. Yet it seems to have been followed in that State, in their supreme court and court of appeals, as a safe and sound rule, and is referred to as an accurate exposition of the law. *Cole* v. *Trustees of Medina*, 27 Barb. 218; *Kavanagh* v. *City of Brooklyn*, 38 Barb. 232; *Mills* v. *City of Brooklyn*, 32 New York 489, where DENIO, C. J., in the opinion, fully endorses the doctrine of the former cases.

In *Burnham* v. *Stevens*, 33 N. H. 247–253, BELL, J., adopts the law of *Yates* v. *Lansing*, *supra*, and says that it was there shown that from the earliest ages of the common law it has always been held that no judge is answerable, in a civil action, on account of any judgment rendered by him as a judge. To this rule there is but one exception, and that is where the judge exceeds his jurisdiction, in which case his character as judge furnishes him no protection. *Greene* v. *Mead*, 18

N. H. 505; *Evans* v. *Foster*, 1 N. H. 374; *Jordan* v. *Hanson*, 49 N. H. 199. And so courts of limited jurisdiction, and magistrates, are not liable to a civil action for judicial acts within the scope of their authority; but if they exceed their powers, the whole proceeding is *coram non judice*, and all concerned in such void proceedings are liable in trespass. *Yates* v. *Lansing*, 5 Johns. *supra;* case of the *Marshalsea*, 10 Co. 68; *Phelps* v. *Sill*, 1 Day's Conn. 315; *Groenvelt* v. *Burwell*, 1 Ld. Raym. 454.

In Massachusetts, the same is held to be law in regard to courts and magistrates, that they are not liable to a civil action, even for deciding wrong maliciously, if it was a case in which they were called to act judicially, if within their jurisdiction. *Pratt* v. *Gardner*, 2 Cush. 63–70; *Chickering* v. *Robinson*, 3 Cush. 543; *Raymond* v. *Bolles*, 11 Cush. 315.

But in regard to town officers, their rule would seem to be not uniform. They hold that highway surveyors and assessors are to be protected in all acts in their offices calling for the exercise of discretion and judgment, so long as they keep within their jurisdiction,—certainly against all mere mistakes in judgment,—and also lean very strongly to the position that they are not liable to a civil suit, even for wilful and malicious acts in such cases. *Dillingham* v. *Snow*, 5 Mass. 558; *Callender* v. *Marsh*, 1 Pick. 418; *Benjamin* v. *Wheeler*, 8 Gray 409; S. C. 15 Gray 486. While, on the other hand, it is held that an action lies against the selectmen of a town, presiding at an election, for wrongfully rejecting the vote of a qualified voter, although without malice on their part—*Lincoln* v. *Hapgood*, 11 Mass. 350–357, and note and cases cited; so, also, against the clerk of a parish for such wrongful rejection of a vote at a parish meeting. *Oakes* v. *Hill*, 10 Pick. 333; *Keith* v. *Howard*, 24 Pick. 292.

But in New Hampshire the courts have always held differently on this point. It was settled in *Wheeler* v. *Patterson*, 1 N. H. 88, where the duty devolved upon the moderator of the town-meeting to hear the evidence and decide upon the citizen's right to vote, and to receive or reject his ballot accordingly, that an action would not lie against the moderator of a town-meeting for refusing to receive the vote of a person legally qualified to vote, without showing malice on the part of the moderator; and it is said, in *Turnpike* v. *Champney*, 2 N. H. 199, that such an action will lie against such moderator upon proof of malice.

It was also held, in the case last cited, that selectmen of a town, in laying out a highway, stand in the same situation as a moderator of a town-meeting, who is called on to decide upon the right of a citizen to vote. If they lay out a highway in good faith because they think that the public requires it, they are not liable to any one for damages, though the new road might interfere with an existing turnpike, and take travel away from its road and toll from its gate; but if they laid out the road simply for the purpose of enabling people to avoid the gate upon such turnpike, the laying out would be void, and the selectmen would be liable for damages. This doctrine, that selectmen are not

liable for an honest mistake in deciding upon a man's right to vote, if there is no fraud or malice in the case, has been the settled law of this State for more than fifty years. Such instructions have been given to juries in all cases where the question was raised; and the instructions have generally been just as uniform in the other direction, viz., that if the selectmen fraudulently or maliciously refused to allow a man to vote who had a legal right so to vote, and who would have been allowed the privilege but for such fraud or malice, they would be personally liable in damages for such injury. *Butterfield* v. *Healey*, Sullivan county, December term, 1869.

In *Palmer* v. *Carroll*, 24 N. H. 314, this subject is alluded to, and PERLEY, J., after enumerating the duties and legal liabilities of highway surveyors, says,—" Within the limit of the means which the law places in his hands, he is entrusted with a discretion to make such repairs as he may deem necessary. In this matter he has no guide but his own judgment; he does not act under the direction of any other public officer. If he exercises his best judgment faithfully and diligently, within the limits of his legal authority, the town are bound by his acts. Any other rule, which should subject him to have his best judgment revised and reversed in a mere matter of opinion, would be extremely unreasonable. He acts as the public agent of the town, and the town are bound by his acts fairly done within the scope of his authority." But he adds—" If the defendant could have shown that the plaintiff acted in his office carelessly or corruptly, the case would have presented a different question."

In *Cheshire Turnpike* v. *Stevens*, 10 N. H. 133, where the selectmen had laid out a highway without proper authority, the sole object being to avoid a toll-gate, it was held that the laying out was void, and that the selectmen were personally liable in case for damages. The same principle is recognized in *Rowe* v. *Addison*, 34 N. H. 313, that surveyors of highways are not liable for acts properly done within the scope of their authority; and that the converse of this proposition is also true, that surveyors are liable in damages for any wanton or malicious acts in making or repairing highways within their districts. Another element was, also, improperly introduced in that case, as we shall have occasion to notice. *Lebanon* v. *Olcott*, 1 N. H. 339; *Woods* v. *Nashua Mng. Co.*, 4 N. H. 527; *Aldrich* v. *Cheshire Railroad*, 21 N. H. 359; *Dearborn* v. *B. C. & M. Railroad*, 24 N. H. 179; *Pritchard* v. *Atkinson*, 3 N. H. 335;—and see Phillipps on Ev. (C. & H.), vol. 3, p. 979.

In New Jersey, the court is inclined to hold the law similar to that held in New York. *Morris* v. *Carey*, 3 Dutcher 377. In Iowa, the courts hold that no officer in the discharge of judicial duties, or such as require the exercise of discretion, &c., can be held liable for an honest mistake, which is as far as their decisions go; but the leaning of the court seems to be in favor of holding that such officer cannot be holden, even for fraudulent acts, if within the scope of his authority. *Wasson* v. *Mitchell*, 18 Iowa 153; *Londegan* v. *Hammar*, 30 Iowa 508.

But see the case of *McCord* v. *High*, 24 Iowa 336, opinions by BECK, J., and DILLON, C. J., and authorities, in which a distinction is drawn between judicial officers, and those whose duties may in part be *quasi* judicial, but in great part ministerial, like those of municipal officers. In Ohio, the ordinary rule is stated as being "that an officer, acting within the scope of his authority, is only responsible for an injury resulting from a corrupt motive." That if he "act honestly and fairly, according to the best of his ability, he would not be responsible; yet undoubtedly, if, regardless of his duty, he should wilfully and maliciously". do an act whereby some person was misled and injured, "he would be responsible." *Ramsey* v. *Riley*, 13 Ohio 157–166. "An officer, acting within the scope of his authority, is only responsible for an injury resulting from a corrupt motive." *Stewart* v. *Southard*, 17 Ohio 402.

This rule, as held in Ohio and in this State, seems to be favored in the supreme court of the United States. *Kendall* v. *Stokes*, 3 Howard 87–98; *Martin* v. *Mott*, 12 Wheat. 31; *Wilkes* v. *Dinsman*, 7 Howard 89–130, where WOODBURY, J., in delivering the opinion of the court, says (p. 129), that "all judicial officers, when acting on subjects within their jurisdiction, are exempted from civil prosecution for their acts." But speaking (p. 130) of other officers who are not properly judicial officers, but whose position becomes *quasi* judicial by being invested with a large discretion, he says,—"Hence, while an officer acts within the limits of that discretion, the same law which gives it to him will protect him in the exercise of it. But for acts beyond his jurisdiction, or attended by circumstances of excessive severity arising from ill-will, a depraved disposition, or vindictive feeling, he can claim no exemption, and should be allowed none under color of his office, however elevated, or however humble the victim."

He says it is a well settled rule " that the acts of a public officer on public matters within his jurisdiction, and where he has a discretion, are to be presumed legal till shown by others to be unjustifiable." " In short, it is not enough to show that he committed an error in judgment, but it must have been a malicious and wilful error,"—and see cases cited.

Such, substantially, we understand to be the well settled law of this State in relation to town officers and others similarly situated; and among that class of officers, I think it will be found that this is the safer rule.

In the Revised Statutes, the general provisions for laying out highways are contained in chapter 49, while the duties of highway surveyors in repairing highways are stated in chapter 55. In neither of these is there anything said about making alterations in existing highways by raising or lowering the same, or making a ditch by the side thereof. But there was the general provision in chapter 55, sec. 15, that a surveyor of highways may " remove any gravel, sand, rocks, or other material from the travelled part of any highway therein, without damage or injury to the adjoining land, to any other part of the high-

ways in said district, for the purpose of repairing and grading the same. But he or those under him shall not, for any purpose, make an uncovered trench or ditch by the side of the travelled part of any highway, next and opposite to any dwelling-house or yard situate thereon, or in any way obstruct the passage to and from the same."

In 1835, the town of Nashua voted " to build a new bridge over the Nashua river, at Nashua village, so called, as soon as possible." Also, " Voted, to raise the ends of the new bridge two feet higher than the old one." In pursuance of these votes a new bridge was built, in 1836 or 1837, two feet higher than the old one, and the highway was filled up year by year at each end of this bridge, so as to make it compare with the height of the bridge. In 1843, one Benden, who had bought a house at the end of this bridge in 1836, before the new bridge was built, brought an action against the town of Nashua for damages caused to his buildings in consequence of the filling up of the highway at his end of the bridge, by means of which the water had been thrown back upon him, filling his cellar, and entering the lower story of his house. Questions of law were reserved, which were decided at the December law term, 1845. See *Benden* v. *Nashua*, 17 N. H. 477.

It was there settled, Parker, C. J., delivering the opinion, that this change in the highway might be properly made under the general provisions " for repairing highways, and keeping them in suitable condition to accommodate the public travel." There being no suggestion in the case that this repair was not necessary or proper for the public accommodation, or that it was not done in a proper and judicious manner, it was said,—" The act, then, was lawfully done, and neither the surveyor, nor the town as principal, can be made liable for damages consequential upon the commission of a lawful act, in the exercise of a public duty required by law, and done in a prudent and lawful manner"—citing *Callender* v. *Marsh*, 1 Pick. 418–432.

That was a case of first impression in Massachusetts, as *Benden* v. *Nashua* was in New Hampshire, both being similar in their main features and facts. In the Massachusetts case, Parker, C. J., held that the surveyor had the power conferred on him by law to make the change, and that the plaintiff could not recover damages ; but he suggests that it would be well for the legislature to make some provision for the payment of damages in such cases. This would seem reasonable, for many highways are laid out and damages paid, and the road used for years in the way it was originally contemplated that it should be used, and then, owing to an increase of population and of business, it becomes necessary to dig down the hills and fill up the valleys, in a way never contemplated when the highway was first laid out; and where individuals have been greatly damaged by such raising or lowering of the grade in front of their houses or yards, there should be some way to recover damages for such injury, since this injury could not have been considered in the original appraisal, because no such change was then contemplated.

Our legislature in New Hampshire, acting upon the suggestion made

to the Massachusetts legislature in *Callender* v. *Marsh, supra,* or for some other good reason, passed a law to meet this very case, in June, 1848—Laws of 1848, chap. 725—in which it was provided, sec. 1, " that where the selectmen of any town, or any surveyor of highways appointed by them, or by the town, or any person acting under them, shall make, or cause to be made, any alteration in any street or highway in such town, by raising or lowering the same, or making a ditch on the side thereof, whereby any dwelling-house or other building, or any land adjoining may be injured, the town shall be liable to pay the damages occasioned by such alteration." Sections 2 and 3 provide the way in which such damages may be assessed and recovered.

This act assumes, according to the decision in *Benden* v. *Nashua, supra,* that selectmen, or surveyors of highways, may make such alterations by raising or lowering, &c., under their general powers to repair highways and keep them in proper condition, and then provides that when any person is damaged by such raising or lowering, he may recover such damages of the town. In the Compiled Statutes of 1852, this law of 1848 was included in chapter 52, secs. 18, 19, and 20, which chapter relates to the powers of selectmen in laying out highways, instead of being put in chapter 59, relating to the repairs of highways, where it properly belonged. But this act of 1848, although it authorizes surveyors of highways to raise or lower the roads, or to dig ditches by the side of them when necessary for the public accommodation, and where the adjoining owner may be injured by such change, which he was not thus specially authorized to do before, yet the old provision of the Revised Statutes, that a surveyor should not make an uncovered trench or ditch by the side of the travelled part of any highway next and opposite to any dwelling-house or yard, remained in full force. Comp. Stats., ch. 59, sec. 16.

In the General Statutes we find both these provisions brought into the same chapter, upon the subject of repairing highways, as they should be; and not only so, but the two sections,—one prohibiting the making of an *uncovered* ditch beside the highway in front of a dwelling-house, yard, or private way, and the other authorizing the surveyor to raise or lower a highway and to dig ditches beside it,—are put side by side in secs. 19 and 20 of chap. 66, Gen. Stats. They are not inconsistent with each other, but were designed to go side by side, where they are placed, in the General Statutes, one providing that the surveyor may make ditches anywhere by the side of the highway, even though it may cause injury to the land-holder, if the same is needed for the public accommodation, the other providing that where it thus becomes necessary to make a ditch in front of a dwelling-house, yard, or private way, it shall not be left *uncovered,* so that while all its uses as a trench or ditch are preserved for the public benefit, yet by being properly covered, the passage to such house, yard, or private way would not be obstructed. By one section, the surveyor is authorized to make the ditch; by the other, he is forbidden to leave it *uncovered* in certain localities.

This examination of the statutes will enable us the better to explain and understand the case *Adams* v. *Richardson*, 43 N. H. 212. This case was decided rightly, but the reasons for the decision do not fully appear in the opinion, nor does the case as there stated show fully the true nature of the action. The action was trespass against the defendant, for that he entered the plaintiff's close, by the side of the highway and in front of his dwelling-house, and there "made an *uncovered* ditch, whereby the plaintiff was obstructed in passing to and from his buildings," and other wrongs, &c. The action was founded upon the last clause of sec. 15, ch. 55, Revised Statutes, before cited (Comp. Laws, ch. 59, sec. 16), which, it was claimed by the plaintiff, was still in full force; but the defendant claimed that this provision had been repealed by the law of 1848 (Comp. Laws, ch. 52, secs. 18, 19, and 20), so that the defendant might make not only a ditch, but an *uncovered* ditch, by the side of the highway and against a dwelling-house.

But the court held that the plaintiff's position was right; that the clause forbidding the making of an *uncovered* ditch in front of a dwelling-house, &c., was not repealed by the law of 1848, but that both provisions remained in force; that one was not in any way inconsistent with the other; and that the surveyor was personally liable for making an *uncovered* ditch in that place, because he and all persons under him were expressly forbidden by the statute to do so.

He was liable because he did what he had no authority to do; he acted outside of and beyond his jurisdiction, and of course the city was not liable for that unauthorized and illegal act. Had the surveyor found it necessary to raise or lower the highway at that point, or to make a ditch, either of which might be a damage to the plaintiff, still he might do it properly, but he must cover up the ditch where it came along by the plaintiff's buildings or private way, so as not to obstruct the passage to plaintiff's house, &c., in which case he would have been justified by the provisions of the law in doing all he did, and would not have acted contrary to any, so as to have made himself personally liable; in which case the town would have been liable for any damage done the land-owner, in the way provided in the statute.

This case of *Adams* v. *Richardson* stands, then, when rightly understood, upon the same ground as the other cases which we have examined, and sustains the general principle that runs through all the other cases, viz., that the surveyor is not liable personally for acts done by him in good faith in the discharge of his duty within the scope of his authority, where the acts are what may be termed judicial in character.

*Rowe* v. *Addison*, 34 N. H. 306, sustains this general doctrine,—holding that highway surveyors are not responsible for damages done to land-owners and others, in making or repairing highways in their districts, if they act with discretion and in a proper and suitable manner; otherwise, if their acts were wanton, malicious, or improper. Instead of saying they are not liable, &c., "*if they act with discretion and in a proper and suitable manner,*" it should have stated the rule to be that they are not liable *if they act in good faith and according to their best*

*discretion and judgment;* and instead of saying " otherwise, *if their acts were wanton, malicious, or improper*," it should have stated the rule to be, that it would be otherwise *if the acts were wanton, malicious, or fraudulent, or in bad faith;* because, unless the word *improper* in that sentence is understood to mean the same thing as *fraudulent, or in bad faith,* then its use was wholly *improper* in that connection.

If the work should be judged to be improperly done by others, still the surveyor would not be liable for a mistake in judgment, if he acted in good faith. He would only be liable for wanton, malicious, or fraudulent acts, or for acts done without due authority of law. *Sawyer* v. *Keene,* 47 N. H. 173.

Let us examine the case before us in the light of these principles. The record of the report of the selectmen, widening and straightening the highway, was competent, as tending to show how and where the highway had been widened and straightened; and so far it was not objected to. But the part objected to (No. 1) undertook to state certain agreements with the plaintiff, and certain claims made by the selectmen, which that report was no evidence of.—the report only containing the statements of the selectmen upon these points which were not made under oath, and were of no more force and effect than any other statements made out of court, not under oath, which would be the merest hearsay. It was not matter which could properly be incorporated into a report of that kind, but was matter of proof, and must be proved, like other facts, by sworn testimony in the usual way. The receipt might have been competent in connection with the oath of a witness as to the signature of the plaintiff, and as to the payment of the money, but only of the statements which were contained in it. No objection was made to it. The testimony of the defendant (No. 2) was competent, as tending to show good faith on the part of the defendant, and was properly admitted.

The testimony of Demeritt (No. 3) was competent, as tending to show an agreement of the plaintiff that the town had a right to the gravel taken, and also to show license on the part of the plaintiff to remove the gravel.

The evidence which the plaintiff offered (No. 4) was clearly incompetent. If it had been a case in which the selectmen had authority to act, he would have needed the consent of at least a majority. But that was a case in which the selectmen had no power to act. Selectmen could not license a man to build walls or embankments in a public highway: that is no part of their duty.

The instructions as given (No. 5) needed some modification. The first sentence is well enough. But if, after notice to remove by the defendant,. and the plaintiff removed nothing, the defendant might lawfully remove and use in making such repairs on the road as he, acting in good faith, deemed reasonable, and made in such manner as he deemed reasonable and proper, the gravel and also the earth hauled into the road by the plaintiff, &c. * * * if it was a thing which the defendant deemed it reasonable to have done in making such repairs, &c.,

\* \* \* that if, in removing what the defendant deemed to be an incumbrance, or in making repairs deemed reasonable, in a manner deemed reasonable by the defendant, it was necessary to remove the wall, the defendant might lawfully remove the same, &c.

The instructions asked for (No. 6) should have been given just as asked. The defendant, in the discharge of his official duties, was the sole judge of what was reasonable, and was not liable for an error of judgment. The instructions asked for (No. 7) were correct, all but the last sentence ; they should have stopped with the word "*judgment.*" So far they stated the principle correctly ; but the last part, which required that the surveyor should exercise ordinary and reasonable care and skill to avoid liability, was all wrong. The question of *reasonable* care and skill, or of *ordinary* care and skill, can have no place here. If the surveyor acts in good faith and in the exercise of *his own* best skill and judgment, that is all he is responsible for. His skill and judgment may not amount to the ordinary degree among men in general, but that is not his fault. All the law requires of him is to do the best he can with such an amount of judgment, or of care and skill, as he possesses : beyond that he is not responsible. Our statute prescribes the oath of office which all these town officers are to take, and this oath furnishes in terms the true measure of their legal liability. Gen. Stats., ch. 38, sec. 2. Each one is "faithfully and impartially to discharge and perform" his duties, "according to the best of his abilities," &c.

The question reserved by the court (No. 8) we think might properly have been left to the jury, and that they might properly find, considering what the materials were that were used, and the manner in which and the purpose for which and the time during which they were used, whether there was any conversion of the stones used, or whether the defendant made himself liable for their use, under all the circumstances of the case : no special damage or injury being shown, we think that question may properly be left to the jury.

This surveyor might, under one section of the statute, remove gravel, stones, &c., from one part of his district to another, doing no damage to the adjoining owner ; and under another section he might raise or lower the highway in any part of his district, or dig a ditch on either side of the road, even though it should be an injury to the landowner, who had his remedy upon the town ; but if he dug such ditch in front of the land-owner's buildings, yards, or private ways, he must not leave it uncovered so as to obstruct the passage at these points. Under these provisions this defendant could do all that was done in this case ; and if he acted in good faith, and "according to the best of his abilities," no action can be maintained against him.

*Case discharged.*