Anchor Brewing Company, Appellant, v. The Village of Dobbs Ferry, Respondent.

*Municipal corporation— liability of, for the creation of public nuisances — liability of, for the damages caused by the flow of surface water upon private lands from streets constructed by it.*

Municipal corporations are liable for damages occasioned by acts which have resulted in the creation of public or private nuisances, and also for an unlawful entry upon the property of another, whereby injury is caused.

No immunity from liability is given by the fact that statutory power has been conferred upon a municipal corporation, where its exercise results in the appropriation of, or physical injury to, private property.

A municipal corporation has no right, by the construction of sewers or drains, to collect sewage and deposit it upon the premises of an individual, nor can it, by constructing streets and gutters, collect in a body surface water, which would not naturally flow in that direction, and discharge it upon private property. But a municipal corporation is not liable for consequential damage to a landowner caused by the discharge of surface water upon his property, where such damage results solely from the grading of its streets and highways in pursuance of legislative authority, unless it appears that the flow of water has been diverted from its natural course.

Where the increased flow of water upon the property of an individual is caused by the grading of streets, paving of gutters and flagging of walks in a village, if the water flows in its natural course, the village is not liable for the damage occasioned thereby, and such property owner, however detrimental and injurious the flow of water may be to his property, cannot compel the village to construct drains for the disposal of the surface water; neither can the property owner compel the village to destroy its streets or remove its gutters or pavements.

Appeal by the plaintiff, the Anchor Brewing Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 23d day of June, 1894, upon the decision of the court rendered after a trial at the Westchester Special Term dismissing the plaintiff's complaint upon the merits, and also from an order made at the Westchester Special Term and entered in said clerk's office on the 21st day of July, 1894, confirming said judgment, and also from an order made at the Westchester Special Term and entered in said clerk's office on the 9th day of October, 1894, denying the plaintiff's motion to amend said judgment by striking therefrom the words " on the merits."

*Edward Lauterbach, Wm. H. Cohen, Henry L. Scheuerman* and *Alfred Lauterbach,* for the appellant.

*W. J. Townsend* and *Chas. P. McClelland,* for the respondent.

Brown, P. J. :

This action was brought to obtain an injunction restraining the defendant from maintaining and continuing sewers, culverts and drains, which, it was claimed, diverted the natural flow of surface water, and cast it, together with sewage, in excessive volumes upon the plaintiff's property, and also to recover damages incident to such acts. The village of Dobbs Ferry was incorporated in the year 1873, and is built upon a hillside, which slopes to the west and south. The plaintiff's property lies at the foot of the hill, and is bounded upon the west by the land of the New York Central and Hudson River Railroad Company and the Hudson river. It receives the natural flow of surface water from a large territory, upon which the village is, in part, built, which is indicated upon a map printed in the case. The village has opened and graded streets, paved the gutters and set the curbs, and constructed drains and culverts. The population has also increased, and upon many of the private grounds within the village roads have been constructed with gutters and drains, which receive the flow of surface water and discharge into the public streets.

Plaintiff's property is bounded on the east by Palisade street. Next to the east and further up the hill is Main street. These two streets run, in a general direction, north and south, from Cedar to Chestnut street. Other streets run to the east out of Main street. All the water flowing down the hill through the main streets is concentrated at a point on the easterly side of Palisade avenue, across which it flows through a covered drain, which is continued through private property to the land of Mr. Lange; thence it flows in an open waterway across Lange's property, and is finally discharged into a private drain upon plaintiff's land.

West of Main street the drain is constructed along the bottom of a natural depression in the land, and the open waterway through Lange's land is a natural watercourse to the point where it connects with plaintiff's drain.

The testimony introduced by the plaintiff would justify the con-

clusion that, since the incorporation of the village, the volume of water discharged upon plaintiff's land has largely increased, and that plaintiff has been injured to a considerable extent by this increased flow.

The complaint was dismissed by the trial court upon the ground that the water discharged upon plaintiff's property was surface water only, which flowed in its natural course, and that, for injuries attributable to that source, the defendant was not liable.

We agree with the conclusion reached by the Special Term. The rules of law applicable to cases of this character are well settled. Municipal corporations are liable for damages occasioned by acts resulting in the creation of public or private nuisances, or for an unlawful entry upon property of another, whereby injury is caused. And no immunity from liability results from statutory power conferred upon the corporation, the exercise of which results in the appropriation of, or physical injury to, private property.

Within this rule such corporations may not, by the construction of sewers or drains, collect sewage and deposit it upon the premises of an individual, nor can they, by constructing streets and gutters, collect in a body surface water, which would not naturally flow in that direction, and discharge it upon private property. (*Bastable* v. *City of Syracuse*, 8 Hun, 587; *Byrnes* v. *City of Cohoes*, 67 N. Y. 204; *Noonan* v. *City of Albany*, 79 id. 470; *Seifert* v. *City of Brooklyn*, 101 id. 136–143.)

But a municipal corporation is not liable for consequential damages to a landowner caused by the discharge of surface water upon his property, which is the result solely of the grading of streets and highways in pursuance of legislative authority. (*Wilson* v. *The Mayor*, 1 Den. 595; *Kavanagh* v. *The City of Brooklyn*, 38 Barb. 232; *Lynch* v. *The Mayor*, 76 N. Y. 60; *Birdsall* v. *Clark*, 7 Hun, 351.)

The testimony in this case does not show that the defendant has constructed any sewers in any of the public streets of the village. Undoubtedly a large amount of filth and obnoxious substance have been cast upon plaintiff's property, but, so far as is disclosed in the evidence, it consisted solely of substance accumulated in the streets and gutters and carried by the large flow of water to the foot of the natural watershed.

Neither does the testimony show that, by the grading of any of the streets, the flow of the surface water has been diverted from its natural course.   The construction of the culvert under Palisade street had no other effect than to conduct under the street the water, which, in the absence of the culvert, would have flowed across the surface.

The plaintiff's witness Cozzens testified that before the street was graded the water ran on the surface at that point.   He said: "It found its way over what is now Palisade street into the property that now belongs to Mr. Morton.   *   *   *   As soon as they used wagons there they put a culvert there."

The time of which the witness spoke was prior to the incorporation of the village.

He also testified, speaking of the present time, "if that sewer were not there the water   *   *   *   would nevertheless have flowed down over that watercourse and on the plaintiff's property."

The increase in the size of the culvert has no material relation to the plaintiff's complaint.   It was at first constructed of too small dimension, and failed to carry off all the water flowing on the street. Some of it overflowed and may have injured other property.   But none was, as a result, cast on plaintiff's land which would not have gone there in its natural course.

Neither do I find that any water flowing to the south upon Main street has been diverted from its natural course by the defendant.

There is evidence that, prior to the defendant's incorporation, the water flowed down the east side of Main street to Chestnut street, but the proof is that it ceased to run in that direction before the village was incorporated, and at the time of its incorporation all the water from the east side of that street was flowing into the drain at the junction of Elm street.

The case shows that the increased volume of water, which in time of rainfall is now cast upon the plaintiff's property, is the result of the growth of population in the village and the consequent grading of streets, erection of buildings and improvement of private grounds.   In its natural condition much of the water that fell upon the land was absorbed by the soil and evaporated by the atmosphere, and a part only reached the foot of the watershed. But graded streets, paved gutters and flagged walks prevent its

absorption by the ground, and in increased quantities it flows in its natural course to the river.

For this result, however detrimental and injurious it may be to the plaintiff's property, we are of the opinion that the defendant is not liable. It cannot be compelled to construct drains for the disposal of surface water. (*Mills* v. *City of Brooklyn,* 32 N. Y. 489; *Hines* v. *City of Lockport,* 50 id. 236.)

Neither can it be compelled to destroy its streets or remove its gutters and paving. What the village did was lawful at the time, and in the absence of any claim that it had exceeded its power or performed the work in a negligent manner, it is not legally responsible for the consequential injury to adjacent property.

The judgment and orders must be affirmed, with costs.

PRATT, J., concurred; DYKMAN, J., not sitting.

Judgment and orders affirmed, with costs.