Third Department, March, 1937.
(March 3, 1937.)

Theresa Sgarlata, Respondent, *v.* City of Schenectady, Appellant. (Action No. 1.)

Theresa Sgarlata, Respondent, *v.* City of Schenectady, Appellant. (Action No. 2.)

McNamee, Crapser and Heffernan, JJ., concur; Hill, P. J., dissents, with an opinion.

Rhodes, J. I concur in the dissenting opinion of Presiding Justice Hill. The evidence does not establish that the inadequate culvert caused or contributed to the damage to plaintiff.

Hill, P. J. (dissenting). Plaintiff-respondent owns real property located on lower Broadway, Schenectady, which she claims was damaged by water on five occasions between March and August, 1934, when Schermerhorn creek overflowed its banks. The damages asserted, and for which a recovery has been had, resulted from the flooding of her cellar.

The action was tried before a referee who combined in one document his opinion and decision. Therein it is stated generally as to the natural drainage of surface waters in the city: That Brandywine creek, Schermerhorn creek and Cowhorn creek each drain the surface water from a distinct area. " Schermerhorn Creek and Brandywine Creek meet at a point near Herkimer Street, forming what is known as Veeder Creek, which joins Cowhorn Creek below Edison Avenue, and finally flows into the Mohawk River; that Schermerhorn Creek carried the surface waters in the vicinity of plaintiff's premises." The places of confluence are between the point where the Schermerhorn creek overflowed its banks, to plaintiff's alleged damage, and the Mohawk river. Plaintiff asserts that the amount of water carried in each of these streams was increased " with the coming of improvements, such as paved streets and sidewalks " and the con-

struction of " certain sewers and culverts for the purpose of taking care of the surface water from the paved areas, ultimately emptying such water into the creeks in question." As to the storm sewers in the area under discussion, plaintiff says that each " ultimately " drains into Schermerhorn creek, but the evidence indicates that they empty into Fuller's pond which is the source of Schermerhorn creek. Culverts are constructed at all street intersections. Plaintiff argues that she is adversely affected by the increased flowage in the Brandywine, Veeder and Cowhorn creeks as the increase of volume of the trunk stream after the union of the several creeks retards and sets back the waters of Schermerhorn creek. I find nothing in the evidence to support this argument.

The testimony and photographic exhibits disclose that when there is sudden and heavy rainfall or when ice and snow in large quantities is melted, the streets in the low-lying area where plaintiff's property is located are submerged to varying depths from a few inches to one or two feet and that during these inundations, water enters the cellars of the adjacent properties. Plaintiff asserts that sediment and debris remained after the water had drained from her cellar, and the soil under the supporting foundations and pillars had settled; also that the concrete floor was cracked and broken. She indicts Schermerhorn creek and its overflow of causing her damage. The place of overflow was up stream from the culvert at Broadway, but it is asserted that this culvert set the water back and interfered with the natural flowage of the creek. This culvert is described by the witnesses as a concrete box five by eight feet which passes under Broadway and the New York Central underpass, a distance of about three hundred and fifty feet, the stream here flowing from south to north. At the southerly end there is a device called a trash rack designed to prevent floating objects from entering the culvert. The defendant's witnesses say that this rack is cleaned weekly from April until October or November each year, and was so cleaned during 1934. Through erosion from the upland, the creek has brought down a quantity of silt and soil which, together with debris which has passed through the rack, has been deposited on the floor of the culvert.

The referee has specifically found as to the cause of damage to plaintiff:

" 9. That said damages were caused by reason of the surface waters being taken through sewers and culverts constructed by the City of Schenectady, in a greater quantity and with a larger flow than the said creeks and culverts, and more particularly the creek and culvert in the vicinity of plaintiff's premises, were able to take care of, thereby causing the creek to overflow its banks, depositing water in great quantity on the premises of the plaintiff."

Municipalities are not insurers against damages caused by the entry of surface waters upon private premises and unless failure to perform a ministerial duty is shown, the loss is *dannum absque injuria*. In the designing of structures and ways to accommodate surface waters, the officials of a municipality act in a governmental or judicial capacity, and errors of judgment in design do not furnish a basis for damages. (*Lloyd* v. *Mayor of New York*, 5 N. Y. 369; *Griffin* v. *Mayor of New York*, 9 id. 456; *O'Donnell* v. *City of Syracuse*, 184 id. 1; *Prime* v. *City of Yonkers*, 192 id. 105; *Bert Olney Canning Co.* v. *State*, 230 id. 351.) The volume of water was not increased by the paving of the street or surfacing of parks in the area drained by the Schermerhorn creek. Doubtless the runoff was faster because of these improvements, but liability on behalf of the city would

not arise through the paving of streets or the improvement of public areas. The sewers carrying storm waters from the Schermerhorn water shed discharged into Fuller's pond and these waters were there impounded until they entered the creek. This did not create a liability. (*O'Donnell* v. *City of Syracuse, supra; Prime* v. *City of Yonkers, supra; Lynch* v. *Mayor,* 76 N. Y. 60; *Anchor Brewing Co.* v. *Dobbs Ferry,* 84 Hun, 274; affd., 156 N. Y. 695.) The city was not required to construct dykes along Schermerhorn creek to retain its waters even though the volume was increased temporarily through the quicker runoff incident to the pavement and the storm water sewers that drained into Fuller's pond. (*Mills* v. *City of Brooklyn,* 32 N. Y. 489; *Lynch* v. *Mayor, supra; Prime* v. *City of Yonkers, supra,* p. 110; *Howard* v. *City of Buffalo,* 211 N. Y. 241, 261.)

· There remains to be considered the liability, if any, of the city which arises by the construction of the Broadway culvert. This was in effect a bridge over the creek at the railway underpass and Broadway. The designing of this bridge or culvert and the approval thereof were governmental functions and errors of judgment will not support a recovery. The damages here did not result from negligence for failing to clean the culvert. (Finding 9, earlier quoted.) Silt would have been deposited in the bed of the creek had it not been bridged by the culvert, and if debris placed in the creek by persons not identified with the city government contributed to the deposit in the culvert, the city was not liable. (*O'Donnell* v. *City of Syracuse, supra.*)

The judgment should be reversed on the law and facts, with costs, and the complaint dismissed, with costs.

Rhodes, J., concurs.